RHINE *v.* MACK.

4-4746

Opinion delivered October 11, 1937.

*Partlow & Rhine,* for appellants.

*Maurice Cathey* and *Wm. F. Kirsch,* for appellees.

McHANEY, J. On the 3rd day of July, 1925, J. M. Kinnard executed a warranty deed to his daughter, Bessie K. Tansil, now Bessie K. Childs, to a certain piece of real property in Paragould, Arkansas, for a consideration of $3,000, of which $2,000 was paid in cash and the balance evidenced by three promissory notes, the last of which is for the sum of $400 and is the only one involved in this lawsuit. This note became due and payable three years after date, or July 3, 1928. Kinnard reserved a vendor's lien on the land conveyed to secure the payment of this and the prior notes. Sometime thereafter, he sold and transferred the notes to Clyde Mack, who thereafter died, and appellees are the beneficiaries under his will and were the plaintiffs in this action. Kinnard did not indorse the note when same was transferred to Mack and no assignment was ever made on the mar-

gin of the record showing the sale and transfer of said note. On April 9, 1935, Bessie K. Childs conveyed said lands to her daughter, M. T. O'Dell, now M. T. O'Dell May, by deed in which it was recited that she warranted the title "except the mortgage liens that are now on said property." On January 30, 1936, M. T. O'Dell May conveyed by warranty deed without exception the same lands to appellants F. A. Rhine and Nettie H. Rhine, his wife, which recites a consideration of $600. On February 7, 1936, F. A. Rhine and Nettie H. Rhine conveyed the same property by warranty deed to H. C. Rhine and M. O. Rhine, a son and a daughter of the grantors, for a consideration as expressed in the deed of $1,000 in cash. On February 3, 1936, Kinnard executed a release deed, releasing the lien retained in his deed of July 3, 1925. He testified that he executed this release deed at the solicitation of H. C. Rhine who wrote him a letter under date of January 31, 1936, to his address at Cleveland, Oklahoma, advising him in part as follows: "My father has purchased this property, and although Mrs. Childs stated that this lien in your favor had been paid, in order to clear the record and the title in connection with this property, I am asking that you have the inclosed release deed executed and returned to me in the envelope which is inclosed." Mrs. Childs testified that she had no conversation with H. C. Rhine concerning the piece of property and that he was not quoting anything that she had said to him direct when he wrote the letter to her father. She, also, testified that she had made two payments on the $400 note, one in the amount of $20 on March 1, 1933, and one in the amount of $30 on April 4, 1933, which payments were indorsed on the note.

Appellees brought this action on February 13, 1936, to foreclose the lien securing the balance due on the $400 note, which amounted to $699.56 at that time. Service was had upon the defendants on February 14, 1936, on which date appellants H. C. Rhine and M. O. Rhine recorded the deed from their father and mother. Appellants H. C. and M. O. Rhine intervened in the action. They were not made defendants as their deed was not

put on record until the day after the suit was filed. Interveners set up their title as heretofore set out and alleged that Kinnard, the record owner of the vendor's lien, had released same which was duly recorded and that the vendor's lien had been fully released and discharged as set out by § 7399, Crawford & Moses' Digest. They prayed for a dismissal of the complaint and for costs. Appellees answered this intervention and alleged that the interveners were the son and daughter of F. A. Rhine and Nettie H. Rhine; that the deed under which interveners claim was obtained with knowledge of the rights of the appellees herein, was made without consideration and was made subsequent to the institution of the suit by the appellees against the appellants, was merely colorable and was made for the purpose of defrauding appellees in the enforcement of their rights. F. A. and Nettie Rhine answered admitting the conveyances above set out, denying the assignment of said note for value and before maturity to C. A. Mack. They further say that the assignment to Mack was never made on the margin of the record or in any other manner, and that there is nothing of record giving them notice that appellees claim any interest in said lien and that whatever lien there was on the land was released by the record owner by a proper deed which was duly recorded. They further alleged that they conveyed the land involved in this suit to their son and daughter by warranty deed for a consideration of $1,000 and pray that they be dismissed from the action.

On a trial of the case, the court found in favor of appellees, dismissed the intervention and cross-complaint of appellants for want of equity and rendered judgment in favor of appellees for the sum of $748.87, with interest and costs. The case is here on appeal.

For a reversal of the judgment against them, appellants first contend that the court erred in its findings of fact and conclusions based thereon as follows: "The evidence shows that the interveners were fully informed as to the condition of the title before they received the conveyance from F. A. Rhine and wife. There had been

no release by Kinnard at the time Mrs. May conveyed to F. A. Rhine and wife. The matter had been fully discussed between L. V. Rhine and Mrs. Childs and Mr. L. V. Rhine was in possession of all the facts in relation to the title. In his letter to Kinnard, dated January 31, 1936, H. C. Rhine shows that he, also, knew of the existing indebtedness. He prepared or had prepared the release deed which he inclosed in his letter to Kinnard. He states in this letter that Mrs. Childs 'stated that the lien in your favor had been paid.' Mrs. Childs denies that at any time she told Rhine or any other person that the note had been paid.

"Interveners do not offer any evidence tending to contradict this evidence or to explain it. The statement had the effect of misleading Kinnard into the belief that the indebtedness had been paid and he, therefore, executed the release deed. The deed from F. A. Rhine to H. C. Rhine was executed after the deed of release was executed by Kinnard, and if H. C. Rhine had not induced Kinnard to execute the release by making a statement to him in the letter which the evidence shows was false, the statute would apply."

It is said that these conclusions are not supported by the evidence. We cannot agree with appellants. Mrs. Childs testified positively that she had not stated to H. C. Rhine or to anyone else that the note for $400 had been paid. Mrs. Childs testified very positively that, in her conversation with L. V. Rhine, it was agreed that the sale to his father and mother should be for a consideration of $1,000, out of which she was to pay the Mack note, and we take this testimony to mean that she and L. V. Rhine discussed said note and that he as the agent of his father and mother, was fully informed that said note was outstanding and unpaid. While there was no express declaration to this effect by the witness, yet, in the absence of any contradiction or denial of this testimony by L. V. Rhine, we think the trial court was justified in concluding that such was the fact. Moreover, appellants were bound to take notice of the outstanding lien because it appeared in their chain of title, and we

think the evidence of Mrs. Childs was sufficient to establish the fact that it was still unpaid and that the note was held by the appellees. Corroborating the evidence of Mrs. Childs, the evidence shows that a deed was prepared by L. V. Rhine, conveying the property to his father and mother from Mrs. May wherein the consideration was recited as $1,000. This deed was left with Mrs. Childs to be signed by her daughter to whom she had made a voluntary conveyance of the property, but which was not signed because at that time her daughter was away from Paragould and in Hot Springs, Arkansas.

As to the release deed secured by H. C. Rhine from Kinnard, we think the chancellor was justified in finding that such deed was secured from him by the false statement made in his letter that Mrs. Childs had stated that the indebtedness had been paid and that the execution of the release deed was a mere formality. While the note was apparently barred on the face of the record, no payment or agreement for extension having been indorsed on the margin of the record either under § 7408 or 7382, Crawford & Moses' Digest, appellants have not pleaded the benefit of either of said sections. Section 7408 has no application to vendors' liens except as amended in 1935, act 36, and there is no contention in this record that § 7382 has any application because of any agreement to extend the maturity date of said note. For a discussion of these matters see *Elk Horn Bank & Trust Company* v. *Spraggins*, 182 Ark. 27, 30 S. W. (2d) 858, where it was said: "The record in this case does not show any extension or renewal of the debt or note of S. W. Hearn to Mrs. Spraggins, secured by the vendor's lien. Hence we are of the opinion that § 7382 has no application under the facts of the present case. Payments on the note or indebtedness of S. W. Hearn to Mrs. Spraggins were made from time to time, and proof of that fact was established by the testimony of Mrs. Spraggins, which is uncontradicted. Hence her debt was established by the uncontradicted evidence, and, under the principles of law above stated she had a vendor's lien on the lots in controversy which could be en-

forced in a suit in equity. In short, the effect of a renewal or an extension as provided in § 7382 is merely to extend the time of payment of the note or deed, and does not discharge the obligation. On the other hand, the payment as provided in § 7408 extinguishes the debt to the extent of the payment."

So here, the undisputed evidence shows that payments were made on the outstanding note to the appellees in 1933, within the period of limitations, and so far as this record discloses, there was no agreement to extend or renew the debt secured by the lien. Therefore, § 7382 would not apply even if it had been pleaded in the action, and § 7408, except as amended, relating to payments, has no application because it does not extend to vendors' liens.

As above stated, we think the facts and circumstances under which the release deed was acquired justified the conclusion that it was invalid on account of the misrepresentations contained in the letter which secured it. But appellants contend that because appellees did not allege fraud in their pleadings, the appellees were in no position to take advantage of it. It is, also, contended that for this reason no attempt was made on their part to introduce testimony in this connection. It is, of course, the general rule that fraud must be pleaded in order to rely on it, but we think, under the state of the pleadings here, appellees may do so. Appellants H. C. and M. O. Rhine filed an intervention claiming to be the owners through conveyances from their father and mother and asserted the validity of the release deed. Appellees answered the intervention with a general denial. These appellants, for the purposes of their intervention, became plaintiffs and the burden was on them to establish the allegations of their complaint by evidence. They offered no evidence of any kind except they exhibited with their intervention their deed from their father and mother and the release deed. The deed to them recited a consideration of $1,000. The answer to the intervention alleged that the conveyance to H. C. and M. O. Rhine by their father and mother was made with-

out consideration subsequent to the institution of the suit by appellees and that same is merely colorable and was made for the purpose of defeating appellants in the enforcement of their rights, as set forth in the complaint. The recital in the deed relative to the consideration, without any proof to support it, is merely *res inter alios acta,* and not competent to prove a consideration against appellees. The language used by Judge RIDDICK in *Leonhard* v. *Flood,* 68 Ark. 162, 56 S. W. 781, was quoted with approval in *Wasson, Bank Commissioner* v. *Greig, ante,* p. 420, 108 S. W. (2d) 463, as follows: ''It has been several times decided by this court that when the creditors of a vendor attack his conveyance as fraudulent, and introduce proof making out a *prima facie* case of fraud against the vendor, the burden of showing a consideration is on the vendee, and that in such a case the recital in the deed is regarded only as *res inter alios acta,* and not competent to prove a consideration as against the creditor of the vendor.''

We are, therefore, of the opinion that the lower court properly determined the question of the validity of the release deed, as the evidence, offered to establish the misrepresentations and fraud in its procurement, was competent under the pleadings, and the cases cited by appellants, holding to the general rule, are not in point.

Therefore, the release deed being void, there was no satisfaction under §§ 7399 and 7400, Crawford & Moses' Digest, relied upon by appellants, and the decree of the chancery court is correct and must be affirmed. It is so ordered.